# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| KATHERINE WHITE and DEREK WHITE, | )<br>)<br>) |
| Plaintiffs, | ) No. 2:14-cv-02866-DCN<br>)<br>) |
| vs. | )<br>) |
| RENAISSANCE HOTEL MANAGEMENT COMPANY, LLC, | ) **ORDER**<br>)<br>) |
| Defendant. | )<br>) |

This matter is before the court on defendant Renaissance Hotel Management Company, LLC's ("the Hotel") motion for reconsideration of the court's August 10, 2015 order ("August 10 Order") in which the court denied the Hotel's motion for summary judgment. For the reasons set forth below, the Hotel's motion for reconsideration is denied.

## I.  BACKGROUND

On August 5, 2011, Katherine White ("Ms. White") and Derek White ("Mr. White") (collectively, "the Whites") arrived at the Hotel for a two-week business trip. Ms. White requested a room with a balcony when she made the reservations, but the Hotel did not have such a room available. K. White Depo. 31:23–25, 32:1–7, 32:21–25. Upon their adamant request, the Whites were moved into a room with a balcony, Room 309, the following day. K. White Depo. 34:5–9. Ms. White inspected Room 309 and walked out onto the balcony where she observed a "fairly large . . . patch of green slimy mold" on the balcony floor. Def.'s Mot. Ex. A, K. White Depo. 35:2–18. When Ms.

1

White walked out onto the balcony, she slipped on the mold and called the front desk to request that the Hotel clean up the mold. K. White Depo. 45:25–46:2. According to Ms. White, she reported the mold to housekeeping the next day and again later during her stay, but the Hotel never cleaned up the mold. K. White Depo. 46:9–49:11. During her stay, Ms. White spent every day on the balcony. Each day, she moved the table on the balcony over the top of the moldy area and then placed two chairs on the opposite side of the balcony where she sat in the sun. K. White Depo. 54:7–20, 55:12–25. Ms. White testified that each day, the housekeepers returned the furniture to its original position. K. White Depo. 55:22–25.

On August 17, 2011, Ms. White was again sitting on the balcony. She moved the chair in which she was sitting to the right corner of the balcony near the railing and situated the second chair in front of her on which to rest her feet. K. White Depo. 63:9–65:3, 70:8, 72:2. Ms. White also placed the table closer to her chair, partially covering the mold to provide a place to put her glasses and her book but "also to remind [her] not to walk there." K. White Depo. 71:14–20. At 7:00 p.m., Ms. White received a call from Mr. White. During their conversation, Mr. White heard a crash, and Ms. White became unresponsive. Mr. White called the Hotel, and when he arrived at the hotel, EMS and hotel staff were assisting Ms. White as she lay on the balcony floor. Def.'s Mot. Ex. B., D. White Depo. 32:25, 34:15. Ms. White remembers talking to her husband while sitting but does not remember falling or any of the events that unfolded during their conversation. K. White Depo. 80:25. Ms. White sustained injuries as a result of her fall.

On July 17, 2014, the Whites filed suit against the Hotel in this court on the basis of diversity jurisdiction. The Whites filed an amended complaint on August 12, 2014,

2

substituting the Hotel as the proper defendant. Ms. White alleges that the Hotel was negligent and reckless in numerous ways, including: (1) failing to properly inspect the condition of the balcony; (2) allowing mold/algae to grow on the balcony over a prolonged period of time; (3) failing to properly monitor the condition of the balcony; (4) failing to clean the balcony after noticing the growth of the mold/algae; (5) failing to adequately warn invitees that a dangerous condition existed; (6) failing to take proper precautions to ensure the safety of Ms. White and other invitees; (7) allowing a dangerous condition to exist with a reckless disregard for the rights and safety of others; (8) failing to timely correct the dangerous condition within a reasonable time after being notified; and (9) failing to exercise the degree of care and caution which a reasonable person would have exercised under the same or similar circumstances. Additionally, Mr. White brings a loss of consortium claim. Ms. White seeks damages for her medical bills, physical and mental pain and suffering, permanent physical impairment, and loss of enjoyment of life.

On April 29, 2015, the Hotel filed a motion for summary judgment, arguing that Ms. White is barred from recovery because the alleged hazardous condition was open and obvious and Ms. White was on notice of the condition. On June 17, 2015, the Whites filed a response in opposition to the motion for summary judgment. The Hotel filed a reply on June 29, 2015. The court held a hearing on the motion for summary judgment on July 24, 2015. On August 10, 2015, the court issued an order denying the Hotel's motion for summary judgment, finding that there was a genuine issue of material fact as to whether the Hotel anticipated that, despite the open and obvious character of the hazard, Ms. White would continue to encounter the mold. The Hotel filed the present

3

motion for reconsideration on September 4, 2015. The parties filed a consent motion to stay a ruling on the motion for reconsideration in order for the parties to mediate the dispute. The parties conducted an unsuccessful mediation on November 13, 2015. The Whites filed a response in opposition to the motion for reconsideration on November 30, 2015, and on December 16, 2015, the Hotel replied. The motion has been fully briefed and is now ripe for the courts review.

## II.  STANDARD

The Hotel moves for reconsideration of the court's August 10 Order pursuant to Federal Rule of Civil Procedure 59(e). The Fourth Circuit has recognized three grounds for amending an earlier judgment under Federal Rule of Civil Procedure 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). "In general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Id. (citation and internal quotation marks omitted). A motion for reconsideration "is not a license for a losing party's attorney to get a second bite at the apple." Bey v. Shapiro Brown & Alt, LLP, 997 F. Supp. 2d 310, 321 (D. Md. 2014) (citing Shields v. Shetler, 120 F.R.D. 123, 125–26 (D. Colo. 1988)). While the Hotel does not assert under which ground it moves to amend the court's order, the court assumes it is to correct a clear error of law or prevent manifest injustice.

### III.   DISCUSSION

The Hotel's motion consists of the following three arguments:  (1) the court failed to properly distinguish Hancock v. Mid–South Mgmt. Co., 673 S.E.2d 801, 803 (S.C. 2009), and Padgett v. Colleton County, 679 S.E.2d 533, 537 (S.C. Ct. App. 2009); (2) the court improperly distinguished Nash v. Marriott Hotel Servs., Inc., No. 7:07-cv-503, 2007 WL 3125315, at *1 (D.S.C. Oct. 23, 2007), from the present case; and (3) the court overlooked the Hotel's arguments concerning the applicability of Hackworth v. United States, 366 F. Supp. 2d 326, 330 (D.S.C. 2005).  Although the court finds that the Hotel's motion rehashes arguments already made and addressed in the August 10 Order, the court will address each argument in turn.[1]

### A.   Hancock and Padgett

The Hotel first argues that unlike the plaintiffs in Hancock v. Mid–South Mgmt. Co., 673 S.E.2d 801, 803 (S.C. 2009),[2] and Padgett v. Colleton County, 679 S.E.2d 533, 537 (S.C. Ct. App. 2009),[3] Ms. White "appreciated the potential hazard" the mildew

---

[1]   Because the court's August 10 Order provides an extensive outline of premises liability law in South Carolina, including the open and obvious danger rule and the exception to the rule discussed in Callander, Hancock, Padgett, and Nash, the court will dispense with a lengthy recitation thereof.

[2]   In Hancock, the South Carolina Supreme Court reversed the lower court's grant of summary judgment to a property owner in a premises liability action arising from the plaintiff's fall in the defendant's parking lot.  The Supreme Court of South Carolina, applying Callander and section 343 of the Restatement, held that "taken in a light most favorable to Petitioner, evidence shows that Respondent knew or should have known that a dangerous condition existed on its premises and that invitees would have to encounter this condition."  Hancock, 673 S.E.2d at 803.  The court overturned the grant of summary judgment, holding that "[w]hile a parking lot's state of disrepair may be considered open and obvious, a jury could determine that Respondent should have anticipated that such a condition may cause an invitee to fall and injure themselves."  Id.

[3]   In Padgett, an individual brought a premises liability action against Colleton County after falling in a hole on the premises of the county courthouse.  After

presented.  Def.'s Mot. 2.  Therefore, the Hotel argues that the court failed to properly distinguish Hancock and Padgett from this case.  However, the Hotel fails to cite any case law in which a court in a premises liability action holds that the Callander[4] exception applies, but that the claim is barred because there is evidence that the plaintiff appreciated the risk.  Further, as stated in the August 10 Order, the court finds this argument more appropriate for a determination on the affirmative defenses of assumption of risk and comparative negligence.  See August 10 Order, 9 ("Rather than act as a bar to recovery at the summary judgment stage, Ms. White's continued use of the balcony despite her knowledge of the mold and its slippery condition should be evaluated for purposes of comparative negligence.").

Under the comparative negligence standard, "a plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant." Nelson v. Concrete Supply Co., 399 S.E.2d 783, 784 (S.C. 1991).  "A defense based on the doctrine of assumption of risk requires a showing that the plaintiff (1) has knowledge of the facts constituting the dangerous condition; (2) knew that the condition was

---

discovering that the back door was locked, the plaintiff took a "well-worn path on the grounds that had been made by other visitors to the Courthouse" rather than the sidewalk.  Id. at 535.  The plaintiff fell in an eight-inch deep hole along the path.  Id.  Recognizing the aforementioned case law, the South Carolina Court of Appeals overturned the trial court's directed verdict, finding that the evidence presented by the plaintiff created a reasonable inference that Colleton County "should have anticipated that individuals using the services at the Courthouse could be harmed by the ongoing landscape operations." Id. at 537.

[4]   In Callander v. Charleston Doughnut Corp., 406 S.E.2d 361 (S.C. 1991), the South Carolina Supreme Court expressly adopted the Restatement (Second) of Torts section 343(A) (1965), which provides that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."  Id. at 362 (emphasis added).

dangerous; (3) appreciated the nature and extent of the danger; and (4) voluntarily exposed herself to the danger. Creighton v. Coligny Plaza Ltd. P'ship, 512 S.E.2d 510, 519 (S.C. Ct. App. 1998) (citing Pryor v. Northwest Apartments, Ltd., 469 S.E.2d 630 (S.C. Ct. App. 1996)). "The determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn." Berberich v. Jack, 709 S.E.2d 607, 611 (S.C. 2011) (quoting Hurd v. Williamsburg Cty., 611 S.E.2d 488, 492 (S.C. 2005). Similarly, the defense of assumption of risk "ordinarily present[s] [a] question[] of fact to be determined by a jury and only rarely become[s] [a] question[] of law for the court to determine." Id. (citing Small v. Pioneer Mach., Inc., 450 S.E.2d 609 (S.C. Ct. App. 1994); Singletary v. S.C. Dep't of Educ., 447 S.E.2d 231 (S.C. Ct. App. 1994)) (emphasis added).

There is a genuine issue of material fact as to whether Ms. White assumed the risk or was comparatively negligent. Ms. White testified that she placed the table over the mold each day to avoid stepping on it, but that the housekeepers continued to return the furniture to its original position. K. White Depo. 54:7–20, 55:12–25. On the day she fell, Ms. White placed the table over the mold to "remind [her] not to walk there." K. White Depo. 71:14–20. Ms. White further testified that she does not remember falling or any of the events that unfolded while she was on the phone with her husband. K. White Depo. 80:25. Therefore, the court finds that there is sufficient evidence to create a question of fact as to whether Ms. White was comparatively negligent in the slip and fall. The court properly applied Padgett and Hancock. As such, this argument fails.

### B. Nash

The Hotel next argues that the court improperly distinguished Nash. Def.'s Mot. 2–3. In Nash v. Marriott Hotel Servs., Inc., No. 7:07-cv-503, 2007 WL 3125315, at *1 (D.S.C. Oct. 23, 2007), the plaintiff was walking out of a restroom when he slipped and fell on a substance, believed to be vomit, in front of the restroom door. Id. On his way into the restroom, the plaintiff saw the substance and walked around it to enter the restroom, but upon exiting, apparently forgot that the substance was on the floor. Id. A witness testified that she notified three waitresses that there was vomit on the floor outside the men's restroom and that one of the waitresses said that she would advise the front desk. Id. at *2. The court granted summary judgment for the defendant land owner, finding that the danger was open and obvious and concluding that the plaintiff's "failure to remember that the substance was on the floor and inattentiveness upon exiting the restroom do not create a genuine issue of material fact in this case." Id. at *3.

In the August 10 Order, the court stated that following:

> The court finds the present case distinguishable from Nash. Although the plaintiff in Nash was also aware of the hazard and provided testimony that a witness notified three waitresses of the substance on the floor, in the present case, Ms. White herself notified the front desk and the Hotel staff on numerous occasions. In fact, when viewed in the light most favorable to the Whites, the record reflects that Ms. White first notified the Hotel of the hazard and asked that it be cleaned up more than ten days prior to the accident.

August 10 Order, 7. The court did not commit a clear error of law by distinguishing Nash. "The degree of care owed with regard to an open and obvious danger is commensurate with the circumstances involved, including the possessor's prior knowledge of the defect's existence and the age and capacity of the invitee." Hackworth

8

v. United States, 366 F. Supp. 2d 326, 330 (D.S.C. 2005) (emphasis added).  Weighing the circumstances involved, there is sufficient evidence from which a reasonable jury could discern that the Hotel owed Ms. White a heightened degree of care than the hotel in Nash because the Hotel was aware of the danger ten days prior to the accident, while the hotel in Nash was notified of the danger shortly before the accident.  See Nash, 2007 WL 3125315, at *2–3.  Therefore, this argument also fails.

### C.     Hackworth

Lastly, the Hotel argues that the court overlooked its arguments concerning Hackworth v. United States, 366 F. Supp. 2d 326, 330 (D.S.C. 2005).  Def.'s Mot. 3.  In Hackworth, the plaintiff went to the Mini-Mart after several days of raining.  Id. at 328.  On her way into the store, she recalled "jumping puddles."  Id.  The plaintiff alleged that as soon as she stepped inside the Mini-Mart off the rubber mat, she slipped and fell.  Id.  The court recognized that the plaintiff had warning that there could be a puddle in the entrance because she had been jumping puddles and that she testified that she had been looking down in an attempt to be careful.  Id. at 330.  The court held that "given [the plaintiff's] knowledge of the rainy conditions, the close attention [the plaintiff] sa[id] she was paying to the floor, and the fact that a three-foot wide puddle could not be entirely obstructed by overhead lights, the [defendant] had no duty to warn."  Id. at 331.

This case is easily distinguishable from Hackworth because there was absolutely no evidence in Hackworth that the Mini-Mart, unlike the Hotel, was aware of the puddle, much less aware of the puddle for ten days but refused to do anything to clean it up despite continuous requests to do so.  Further, although the court in Hackworth recognized the exception set forth in Callander, the court did not discuss the expeption or

9

its applicability to the circumstances. As thoroughly discussed in the August 10 Order, Ms. White testified that she notified the Hotel of the mold on the balcony, including housekeepers and the front desk, on numerous occasions. K. White Depo. 46:9-49:11. She also testified that she chose the Hotel because of its balcony and specifically requested a room with a balcony when booking the trip. K. White Depo. 33:12, 31:23–25, 32:1–7. While the Hotel argues that Ms. White's knowledge of the harm precludes her from recovery, by the same token, a reasonable jury could find that the Hotel "anticipate[d] that [Ms. White] w[ould] nevertheless encounter the condition" based on its knowledge of the mold. Callander, 406 S.E.2d at 362. Therefore, this argument also fails.

The court holds that the findings contained in the court's August 10 Order were not clear error. Similarly, the order need not be altered to prevent manifest injustice. In short, this is not a situation in which the extraordinary relief provided in Rule 59(e) would be appropriate.

## IV.  CONCLUSION

For the reasons set forth above, defendant's motion for reconsideration is

**DENIED**.

**AND IT IS SO ORDERED**.

                                      **DAVID C. NORTON**
                                      **UNITED STATES DISTRICT JUDGE**

**January 20, 2016**
**Charleston, South Carolina**